# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID E. COTTOM, JR., et al.,** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| **SELENE FINANCE LP, et al.,** | : | No. 25-cv-1903 |
| *Defendants.* | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                              **August 14, 2025**

Defendants Selene Finance LP and U.S. Bank Trust National Association, as Trustee for RCF2 Acquisition Trust, move to dismiss Plaintiffs David E. Cottom, Jr., and Kelli E. Cottom's Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 12 at 1. For the reasons set forth below, this Court will **GRANT** in part and **DENY** in part Defendants' Motion.

## I.     BACKGROUND

The following facts are drawn from Plaintiffs' Complaint and its attached exhibit and are accepted as true at the motion-to-dismiss stage. *See U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). Plaintiffs are homeowners whose property is located in Ambler, Pennsylvania. ECF No. 1-1 at 5. At some point prior to September 15, 2023, Plaintiffs obtained a mortgage on this property, for which Defendants are the owner and servicer.[1] *See* ECF No. 1 at 2. Also prior to September 15, 2023, Defendants commenced a foreclosure action on the property and provided notice to Plaintiffs that their mortgage was in default. *Id.* Ultimately, a foreclosure sale was scheduled for October 25, 2023. *Id.* at 3.

---

[1] Plaintiffs' Complaint does not identify which Defendant is the owner or which is the servicer. *See* ECF No. 1 at 2. In their Opposition to the Motion to Dismiss, Plaintiffs state that Defendant Selene is the servicer of Plaintiffs' mortgage. *See* ECF No. 13 at 7.

Plaintiffs retained counsel to assist with "disputing and/or resolving" the mortgage default and foreclosure sale. *Id.* at 2. On September 15, 2023, Plaintiffs, represented by counsel, submitted a loss mitigation application to Defendants, specifically requesting a loan modification. *See id.* "A loss mitigation application" is "a request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1006 (11th Cir. 2016) (per curiam).

On October 3, 2023, Defendants rejected the loan modification request. *See* ECF No. 1 at 3. In their response, Defendants stated that "[i]n reviewing the file, [it] appears we received documents 9/8/23 and again 9/15/23, however, at the time there was a sale date set for 9/27/23, so both batches of documents were received within 37 days of the sale date and documents were not reviewed." *Id.* Yet, because the foreclosure sale was in fact set for October 25, 2023, Plaintiffs submitted their loan modification request more than 37 days before the foreclosure sale. *See id.* at 4.

According to Plaintiffs, they made "[n]umerous attempts" to have Defendants evaluate their loan modification request and cancel the foreclosure sale. *Id.* However, Defendants declined to do so. *Id.* Faced with the loss of their property, Plaintiffs filed for bankruptcy. *Id.*

On April 14, 2025, Plaintiffs filed the instant suit against Defendants, bringing claims for negligence and reckless indifference (Count 1), common law fraud, "including violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law" (Count 2), and violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* (Count 3). ECF No. 1 at 5, 7, 9. To their Complaint, Plaintiffs attached their September 15, 2023 loss mitigation application. *See* ECF No. 1-1 at 1–94; ECF No.

1 at 2.

Subsequently, Defendants moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 12 at 1. To their Motion, Defendants attached 194 pages of attachments, consisting of a declaration, documents related to Plaintiffs' mortgage, and correspondence from Defendant Selene. *See* ECF No. 12-1 at 1–194.

## II.     LEGAL STANDARD

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding such a motion, the Court must accept "all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). Those allegations do not need to render the plaintiff's claim probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

When a claim alleges a "fraud or mistake," a heightened pleading standard applies. *See* Fed. R. Civ. P. 9(b). The plaintiff "must state with particularity the circumstances constituting fraud or mistake." *Id.* However, elements of an individual's mental state, such as intent or knowledge, "may be alleged generally." *Id.*

To decide whether these pleading requirements are met, courts may consider only the complaint's allegations, "exhibits attached to the complaint," "matters of public record," and documents that are "integral to or explicitly relied upon in the complaint." *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis omitted) (citations omitted). A document is integral to the complaint if "the claims in the complaint are 'based' on [it]." *Id.* (citation omitted). And to

the extent that an integral document conflicts with "the well-pleaded facts of a complaint, the facts in the complaint must prevail" because "[t]he proper place to resolve factual disputes is not on a motion to dismiss, but on a motion for summary judgment." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

### III.  DISCUSSION

Taking the well-pleaded allegations of the Complaint to be true and drawing all reasonable inference in Plaintiffs' favor, *see City of Cambridge Ret. Sys.*, 908 F.3d at 878, Plaintiffs state claims for negligence and reckless indifference and certain actual damages claims under the Real Estate Settlement Procedures Act. However, Plaintiffs fail to state claims for common law fraud, under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, for statutory damages under the Real Estate Settlement Procedures Act, and under the Truth-in-Lending Act.[2]

#### A. Negligence and Reckless Indifference

Plaintiffs argue that Defendants negligently and recklessly misrepresented their foreclosure sale date and refused to review their loss mitigation application as a result. *See* ECF No. 1 at 5–6. At base, these are both negligence claims because, under Pennsylvania law, recklessness is not a standalone tort but "remains sounding in negligence." *Archibald v. Kemble*, 971 A.2d 513, 519 (Pa. Super. Ct. 2009).

Defendants move to dismiss these claims on two related grounds: They argue that the "gist of the action" and economic loss doctrines bar Plaintiffs' claims. *See* ECF No. 12 at 12. Taking

---

[2] This Court has doubts regarding Defendant U.S. Bank Trust National Association's involvement in the conduct alleged in the Complaint, given that Plaintiffs' September 15 loan modification request refers overwhelmingly to Defendant Selene. *See, e.g.*, ECF No. 1-1 at 2–3, 5. However, the Complaint alleges that Defendants acted jointly and that Defendant U.S. Bank Trust National Association's principal office operated "c/o Selene Finance LP," from which it appears the two entities are linked and possibly agents of one another. ECF No. 1 at 1. Taking these allegations to be true, and absent greater clarity from Defendants on their respective roles, the Court will not dismiss Defendant U.S. Bank Trust National Association at this juncture.

Plaintiffs' allegations to be true, and in light of the limited information before the Court at this stage, it is premature to conclude that the gist of the action doctrine or economic loss doctrine applies.

### 1. *"Gist of the Action" Doctrine*

Defendants argue that the "gist of the action" doctrine requires dismissal of Plaintiffs' tort claims. ECF No. 12 at 12. That doctrine bars a plaintiff from bringing a tort law claim when the claim actually sounds in a breach of contract. *See Earl v. NVR, Inc.*, 990 F.3d 310, 314–15 (3d Cir. 2021). "[T]he mere existence of a contract" is not enough for the gist of the action doctrine to apply. *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 69 (Pa. 2014). Rather, the "critical" factor is "the nature of the duty" that has allegedly been breached, and courts must look to "substance of the [plaintiff's] allegations," rather than labeling, to make this determination. *Id.* at 68. If the substance of "the claim involves the defendant's violation of a broader social duty," rather than the breach of "a specific promise" rooted in a contract, the gist of the action doctrine does not apply. *Id.*

"Caution must be exercised" in granting a motion to dismiss based on the gist of the action doctrine, since "whether tort and contract claims are separate and distinct can be a factually intensive inquiry." *Haymond v. Lundy*, No. 99-5015, 2000 WL 804432, at *8 (E.D. Pa. June 22, 2000), *aff'd sub nom. Lundy v. Hochberg*, 79 F. App'x 503 (3d Cir. 2003); *see also Geesey v. CitiMortgage, Inc.*, 135 F. Supp. 3d 332, 353 (W.D. Pa. 2015). In particular, it may be valuable for a court to examine the parties' agreement to determine if a plaintiff's claim stems from a breach of a "specific [contractual] promise," *Bruno*, 106 A.3d at 68. *See Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 567 (D.V.I. 2004) ("It is especially inappropriate to dismiss a tort claim as duplicative of a contract claim when the contours of the agreement . . . are not clear."); *Mill Run Assocs. v. Locke Prop. Co.*, 282 F. Supp. 2d 278, 291 (E.D. Pa. 2003) (declining to

dismiss tort claims based on gist of the action doctrine where the existence and scope of the parties' agreement was disputed).

With these background principles in mind, dismissal is premature here. According to Plaintiffs, Defendants made an inexplicable mistake in the date of Plaintiffs' foreclosure sale, counting the number of days between the sale and the submission of Plaintiffs' loss mitigation application, and refusing to consider the application. *See* ECF No. 1 at 2–3. This was not a minor transcription error, but a 28-day discrepancy in the represented and actual foreclose sale dates. *Id.* at 3. Importantly, significant questions exist about whether Defendants' duty to truthfully represent Plaintiffs' foreclosure sale date and work towards mitigating Plaintiffs' losses is contractual, statutory, *see infra* Section III.C, or based in tort. *See Bruno*, 106 A.3d at 51, 70–71 (though adjuster would not have inspected the plaintiffs' property for mold but for the parties' contract, the gist of the action doctrine did not bar tort claims arising from the adjuster's false representations about mold during the contract period). Crucially, neither party has pointed to contractual provisions that may govern here. Indeed, Plaintiffs claim not to have a contractual relationship with Defendant Selene at all. *See* ECF No. 13 at 7.

In light of the above, at this early stage, Plaintiffs have plausibly alleged that the substance of their claims does not turn on the breach of "a specific [contractual] promise." *See Bruno*, 106 A.3d at 68. After the benefit of discovery, this Court may more closely examine any contractual terms that exist here. This Court will therefore not dismiss Plaintiffs' negligence and reckless indifference claims based on the gist of the action doctrine.

### 2. *Economic Loss Doctrine*

Defendants also argue that the economic loss doctrine bars Plaintiffs' negligence and reckless indifference claims. ECF No. 12 at 12. That doctrine prevents plaintiffs from bringing negligence claims for purely economic damages when the duty breached by the defendant arises

from a contract.³ *See Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018). If the defendant's duty "arises independently of any contractual duties between the parties, "then a breach of that duty may support a tort action" for economic losses. *Id.*

Here, it is premature to conclude that Defendants' duties arose from a contract, as discussed above. *See supra* Section III.A.1; *Battle Born Munitions Inc. v. Dicks Sporting Goods Inc.*, No. 22-1005, 2023 WL 4758449, at *2 & n.4 (3d Cir. July 26, 2023) (stating that the "economic loss doctrine operates in much the same way" as the gist of the action doctrine). Accordingly, this Court will not apply the economic loss doctrine at this stage to dismiss Plaintiffs' negligence and reckless indifference claims. Because the Court does not apply the economic loss doctrine on this ground, it does not reach Plaintiffs' argument that their tort claims are not solely for economic damages. *See* ECF No. 13 at 6.

### B. Common Law Fraud and Pennsylvania Unfair Trade Practices and Consumer Protection Law

Next, Plaintiffs bring claims for common law fraud, including a "violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law," 73 Pa. Stat. Ann. § 201-1 *et seq*. *See* ECF No. 1 at 7. Plaintiffs fail to state claims under these laws.

#### 1. *Common Law Fraud*

Under Pennsylvania law, a plaintiff bringing a fraud claim must satisfy six elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge

---

³ The Third Circuit, applying Pennsylvania law, previously observed that the economic loss doctrine was not limited to "situations in which the parties are bound by a contractual relationship." *See Bouriez v. Carnegie Mellon Univ.*, 430 F. App'x 182, 187 (3d Cir. 2011). However, that reasoning predated the Pennsylvania Supreme Court's decision in *Dittman v. UPMC*. *See Amig v. Cty. of Juniata*, 432 F. Supp. 3d 481, 488 (M.D. Pa. 2020) ("[T]he central question in the application of the economic loss doctrine under *Dittman* now seems to be whether a duty between the parties was created by a contract, as opposed to in tort—not merely whether the plaintiff suffered solely economic injuries.").

7

of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."[4] *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 87 (Pa. 2023) (citation omitted). And common law fraud claims brought in federal court are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Barnard v. Verizon Commc'ns, Inc.*, 451 F. App'x 80, 86 (3d Cir. 2011). Rule 9(b) requires a plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct," including the "time and place of the alleged fraud" or "some [other] measure of substantiation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (internal quotation marks and citation omitted). However, allegations regarding "intent, knowledge, and other conditions of a person's mind," Fed. R. Civ. P. 9(b), are not subject to a heightened pleading standard and need only be plausible. *See Scharpf v. Gen. Dynamics Corp.*, 137 F.4th 188, 201 (4th Cir. 2025); *see also* Fed. R. Civ. P. 9(b).

Plaintiffs appear to allege two theories of fraud. *See* ECF No. 13 at 11. First, they allege that Defendants falsely represented that they could "service the subject loan professionally, expediently, in accordance with the law and in a manner so as not to cause financial harm to the Plaintiffs." ECF No. 1 at 7. To the extent that Plaintiffs allege this as a separate theory of fraud, they fail to state a claim. Plaintiffs fail to allege the "time and place" of this supposed fraud, the specific role each Defendant played, or any other indications that would put Defendants on notice of the "precise misconduct." *Alpizar-Fallas*, 908 F.3d at 919.

Second, Plaintiffs allege that Defendants wrongly concluded that Plaintiffs were ineligible

---

[4] Nothing in the Complaint suggests, and Plaintiffs do not argue, that they are pleading constructive fraud, for which there are different elements.

8

for loss mitigation based on a misrepresented foreclosure sale date. ECF No. 1 at 3, 7–8. With respect to that theory, though Plaintiffs have alleged a misrepresentation—that their foreclosure sale was scheduled for September 27, not October 25—which was material to Plaintiffs' eligibility for loss mitigation, Plaintiffs fail to plausibly connect this to either Defendant's fraudulent intent. None of the Complaint's allegations make it plausible that Defendants intended to deceive Plaintiffs. Defendants had *no* obligation to offer loss mitigation to Plaintiffs. *See* 12 C.F.R. § 1024.41(a) (Nothing in RESPA's regulations "imposes a duty on a servicer to provide any borrower with any specific loss mitigation option"); *Eslick v. Cenlar, Cent. Loan Admin. & Reporting*, No. 17-CV-381, 2017 WL 4836541, at *3 (E.D. Va. Oct. 3, 2017) (observing that a plaintiff "has no legal or statutory right to a loan modification"). And Plaintiffs were aware of the correct foreclosure sale date. *See* ECF No. 1 at 4. Absent additional indicia of fraud, the Complaint does not plausibly allege a fraud claim.[5] However, Plaintiffs may seek to file an amended Complaint, in light of the evidence that may be produced during discovery.

### 2. *Pennsylvania Unfair Trade Practices and Consumer Protection Law*

Next, Plaintiffs fail to state a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Plaintiffs' Complaint fails to cite any specific provision of the Unfair Trade Practices and Consumer Protection Law and only references the Law briefly in passing. *See* ECF No. 1 at 7 (citing generally to the entire statute). By making only general references to the Unfair Trade Practices and Consumer Protection Law in their Complaint, Plaintiffs have failed to state a claim under the Law. *See Karen v. United Servs. Auto. Ass'n*, No. 24-cv-02089, 2025 U.S. Dist. LEXIS 139273, at *12 (D. Nev. July 22, 2025); *see also MacArthur v. San Juan County*, 416 F. Supp. 2d 1098, 1181 (D. Utah 2005) (concluding that where "plaintiffs fail to plead or otherwise

---

[5] Because the Court dismisses Plaintiffs' fraud claims on this ground, it does not reach Defendants' arguments about justifiable reliance. *See* ECF No. 12 at 14–15.

identify acts by one or more defendants that violate the Utah Unfair Practices Act's specific provisions," their "conclusory allegation of a violation" could not sustain a claim under the Act).

Plaintiffs' Opposition to the Motion to Dismiss points to the Law's "catchall provision," which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).[6] However, "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Gov't Emps. Ins. Co. v. Mt. Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 472 (3d Cir. 2024) (internal quotations marks and citations omitted). Plaintiffs have therefore failed to state a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

### C. Truth-in-Lending Act and Real Estate Settlement Procedures Act

Lastly, Plaintiffs bring claims under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* ECF No. 1 at 9. To begin, Plaintiffs fail to state a claim for a Truth-in-Lending Act violation. Their Complaint mentions the Truth-in-Lending Act only briefly in passing, *see id.* at 9–10, and they cite only once to a single provision of the Act's regulations—the requirement for a servicer to issue "a periodic statement" for "each billing cycle," 12 C.F.R. § 1026.41. *See* ECF No. 1 at 10. However, a periodic statement is a term of art under the Act, *see* 12 C.F.R. § 1026.7, and Plaintiffs fail to set forth any factual allegations regarding their billing cycle or entitlement to a periodic statement. And indeed, though Defendants move to dismiss Plaintiffs' Truth-in-Lending Act claims, *see* ECF No. 12 at 16, Plaintiffs' Opposition Brief fails to address those arguments at all.

Plaintiffs, however, state a claim under RESPA. That statute was enacted to protect consumers "from unnecessarily high settlement charges caused by certain abusive practices" in

---

[6] Plaintiffs miscite this provision as 73 P.S. §§201-2(4)(xxvi). *See* ECF No. 13 at 11.

the real estate industry. 12 U.S.C. § 2601(a). Plaintiffs specifically allege that Defendants violated Regulation X, *see* ECF No. 1 at 9–10, which was passed pursuant to RESPA. The provisions of Regulation X most relevant here—those concerning loss mitigation—were promulgated to protect delinquent borrowers in light of a "rapid increase in defaults and foreclosures," including by requiring servicers to follow procedures "designed to identify all available loss mitigation options" and to "properly consider delinquent borrowers for all such options." Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10815, 10818 (Feb. 14, 2013) (codified at 12 C.F.R. § 1024).

Plaintiffs identify numerous sections of Regulation X supposedly violated here, but they do little to connect most of this list to any factual allegations of the Complaint.[7] *See* ECF No. 1 at 10. Nonetheless, Plaintiffs plausibly advance two theories as to how Defendants violated RESPA. First, they claim that Defendants unlawfully "moved for a foreclosure sale despite receipt of a complete loss mitigation application," in violation of 12 C.F.R. § 1024.41(g). *See* ECF No. 1 at 6 (citing 12 C.F.R. § 1024.41(g)). Second, they allege that Defendants unlawfully refused to evaluate their complete loss mitigation application, including in violation of § 1024.41(c)(1). *See* ECF No. 1 at 3, 5–6, 8 (citing 12 C.F.R. § 1024.41(c)(1)).

Defendants advance two primary arguments in moving to dismiss Plaintiffs' RESPA claims. *See* ECF No. 12 at 16, 19. They argue that Plaintiffs failed to submit a complete loss mitigation application, as required by Regulation X. *Id.* at 16. They also argue that Plaintiffs failed to plead actual and statutory damages under RESPA. *See id.* at 19. However, taking the allegations of the complaint to be true, Plaintiffs have adequately alleged submission of a complete loss

---

[7] For example, it is unclear what factual allegations make it plausible that Defendants failed to "investigate the owner of [a] mortgage/loan," ECF No. 1 at 10, provide a "60-Day Payment Safe Harbor," *id.*, or educate their employees, *id.* at 8.

11

mitigation application and certain actual damages. However, Plaintiffs fail to state a claim for statutory damages.

### 1. *Complete Loss Mitigation Application*

Defendants argue that Plaintiffs failed to plead that their loss mitigation was complete. A complete loss mitigation application is a requirement of both § 1024.41(g) and § 1024.41(c)(1) of Regulation X. *See* 12 C.F.R. §§ 1024.41(c)(1), (g). Regulation X defines a "complete loss mitigation application" as an application that contains all information "the servicer requires from a borrower" to evaluate the borrower's loss mitigation options. *Id.* § 1024.41(b)(1).

A number of times throughout the Complaint, Plaintiffs allege that their September 15, 2023 loss mitigation application—the application at issue in this case—was complete. *See* ECF No. 1 at 4–5, 7. And they allege that Defendants did not review this application at all, on the false belief that the application was untimely. *See id.* at 3. They also attach their September 15 loss mitigation application to the Complaint, which consists of nearly 100 pages of financial and tax documents. *See* ECF No. 1-1 at 2–94. Taking Plaintiffs' factual allegations to be true and drawing all reasonable inferences in favor of Plaintiffs, *see City of Cambridge Ret. Sys.*, 908 F.3d at 878, Plaintiffs have adequately alleged that they submitted a complete loss mitigation application. According to the Complaint and its attachments, Plaintiffs submitted a complete application and Defendants did not subsequently inform Plaintiffs of any additional information they "require[d] from [them]." 12 C.F.R. § 1024.41(b)(1).

Defendants respond that Defendant Selene had previously identified deficiencies in Plaintiffs' other loss mitigation applications. *See* ECF No. 12 at 18. They attach 194 pages of exhibits, including letters dated June 30, 2023, and August 21, 2023, that state that Plaintiffs' earlier applications were incomplete. *See* ECF No. 12-1 at 112–13, 123–24. And, according to

Defendants, Plaintiffs did not remedy these deficiencies when they submitted a new application on September 15. *See* ECF No. 12 at 18.

However, a court deciding a motion to dismiss is limited to reviewing "only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). That universe is cabined to the complaint and its exhibits, "matters of public record," and documents that are "integral to or explicitly relied upon in the complaint." *See Schmidt*, 770 F.3d at 249 (citations omitted). Other materials are best suited for the summary judgment stage, when the factual record is more fully developed. *See Doe*, 30 F.4th at 342.

This Court declines to consider the letters submitted by Defendants, which do not on their face concern the September 15 application and are neither integral to nor explicitly relied upon by the Complaint. Whether Plaintiffs submitted a complete loss mitigation application, in light of these letters and other evidence, may require a careful parsing of Plaintiffs' September 15 application and the record. That is more appropriate for future stages of litigation. *See id.*

### 2. *Damages*

Defendants next argue that Plaintiffs failed to plead damages for their RESPA claims. *See* ECF No. 12 at 19. Under RESPA, a plaintiff may recover "actual damages" that occurred "as a result of" a violation. 12 U.S.C. § 2605(f)(1)(A). RESPA also permits a plaintiff to recover "additional damages" if the plaintiff establishes a defendant's "pattern or practice of noncompliance." *Id.* § 2605(f)(1)(B). Plaintiffs state a claim for certain actual damages but fail to plead a "pattern or practice of noncompliance." *Id.* Accordingly, Plaintiffs' claims for additional, statutory damages under RESPA will be dismissed.

***Actual damages.*** To state a claim for actual damages under RESPA, a plaintiff must plausibly allege a causal connection between the supposed violation and the damages being sought.

*See Lloyd v. N.J. Hous. & Mortg. Fin. Agency*, 845 F. App'x 139, 144 (3d Cir. 2021) (per curiam). In connection with their RESPA claim, Plaintiffs assert three categories of actual damages: (1) physical and emotional harm from anxiety and other emotional distress "related to the possible loss of property," (2) economic losses from their inability to pursue loss mitigation, and (3) economic losses caused by filing for bankruptcy. *See* ECF No. 1 at 11. As explained below, Plaintiffs plead a causal connection for their emotional distress damages and some economic costs connected to the loss mitigation process. However, they fail to plead a causal connection between any RESPA violations and their decision to file for bankruptcy.

Turning first to the emotional distress damages, Plaintiffs allege that they experienced "anxiety, stress, fear and embarrassment" due to Defendants' RESPA violations. *See id.* A number of courts have held that emotional distress damages such as these are recoverable under RESPA. *See, e.g.*, *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011); *Ranger v. Wells Fargo Bank N.A.*, 757 F. App'x 896, 902 (11th Cir. 2018) (per curiam); *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543, 548 n.6 (6th Cir. 2012). And here, though it is a close call, that harm is plausibly connected to Defendants' conduct. According to the Complaint, Plaintiffs were informed that their foreclosure sale was supposed to occur on September 27, 2023, a month sooner than the October 25, 2023 date for which it was supposed to be scheduled. *See* ECF No. 1 at 3. Plaintiffs allege that, as a result, Defendants refused to consider their loss mitigation application at all. *See id.* When considering these allegations together, having a foreclosure sale moved up by one month and receiving notice from Defendants that their loss mitigation application would not be reviewed at all would plausibly cause stress and other emotional distress. *See Ranger*, 757 F. App'x at 902 (concluding the plaintiffs plausibly alleged emotional distress that "was causally linked to [Defendant's] RESPA violations."); *Sharma v.*

14

*Rushmore Loan Mgmt. Servs.*, LLC, 611 F. Supp. 3d 63, 85 (D. Md. 2020) (holding that allegations of "anxiety, anger, embarrassment, stress" and other emotional distress related to a loss mitigation application sufficed to establish a causal connection at the motion-to-dismiss stage (citation omitted));

To be sure, Plaintiffs' emotional distress appears to be largely attributable to the fact that their mortgage was in default and that their property was scheduled for a foreclosure sale. *See* ECF No. 1 at 2. However, that alone does not establish a failure to plead damages here.[8] *See Catalan*, 629 F.3d at 696 (concluding that the plaintiffs' testimony regarding emotional distress was "sufficient to preclude summary judgment" for the defendant as to RESPA claim, though the defendant would be "free to argue . . . that any such distress was minor and that other stressors in the plaintiffs' lives were the true causes"). Regulation X's loss mitigation provisions were designed to protect delinquent borrowers whose properties were being foreclosed. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10814–15, 10818 (Feb. 14, 2013) (codified at 12 C.F.R. § 1024). And if a foreclosure sale or a default itself could defeat a Regulation X claim at this early stage of litigation, that would undermine the very purpose of Regulation X. *See id.* However, Plaintiffs will face a higher burden at subsequent stages of litigation to show their emotional distress was attributable to Defendants' purported RESPA violations rather than to Plaintiffs' defaulted mortgage. *See McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010) (per curiam).

Plaintiffs next claim that Defendants caused economic losses such as "additional interest, late fees, damage to credit, counsel fees and costs" by prematurely rejecting Plaintiffs' loss

---

[8] Plaintiffs also allege that they were "wrongfully accused of a delinquency and default." ECF No. 1 at 11.

mitigation application. *See* ECF No. 1 at 11. However, a plaintiff has no right to receive "any specific loss mitigation option" from a servicer. 12 C.F.R. § 1024.41(a). And Plaintiffs do not allege that they were qualified for any loss mitigation options. *See Eslick v. Cenlar, Cent. Loan Admin. & Reporting*, No. 17-CV-381, 2017 WL 4836541, at *3 (E.D. Va. Oct. 3, 2017); *Darby v. PNC Mortg., Nat'l Ass'n*, No. CV 16-0210, 2016 WL 7212568, at *4 (D. Md. Dec. 13, 2016). For this reason, to the extent Plaintiffs' alleged economic losses are based on the denial of loss mitigation, Plaintiffs fail to state a claim for such relief.

However, Plaintiffs plead actual damages based on certain counsel fees. Attorneys' fees for bringing a suit under RESPA are not actual damages. *See Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 670 (10th Cir. 2018). That is because RESPA permits the recovery of attorneys fees "in connection with" a lawsuit "*[i]n addition to*" actual damages. *See* 12 U.S.C. § 2605(f)(3) (emphasis added); *Fowler*, 747 F. App'x at 670. At the same time, a number of courts have held that attorneys' fees incurred for responding to a RESPA violation are a form of actual damages, so long as "they are not incurred in connection with bringing a suit." *McGahey v. Fed. Nat'l Mortg. Ass'n*, 266 F. Supp. 3d 421, 441 (D. Me. 2017); *see, e.g.*, *Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015); *Carrillo v. Wells Fargo Bank, N.A.*, No. 22-CV-3985, 2023 WL 5423015, at *5 (C.D. Cal. May 18, 2023); *Grembowiec v. Select Portfolio Servicing, Inc.*, No. 18-CV-16885, 2019 WL 3183588, at *6 (D.N.J. July 16, 2019). "This approach is consistent with RESPA's statutory provision for attorney's fees because the statute is limited to fees incurred [only] in connection with an action . . . ." *McGahey*, 266 F. Supp. 3d at 441. Here, Plaintiffs allege that they retained counsel to assist with the loss mitigation process and that after Defendants declined to review Plaintiffs' application based on the incorrect foreclosure sale date, "[n]umerous attempts were made" to have Defendants cancel the foreclosure sale and

"evaluate the . . . application." *See* ECF No. 1 at 2–4. Any counsel fees based on these efforts were not the result of bringing a lawsuit under RESPA but instead incurred to respond to Defendants' alleged RESPA violations.

Plaintiffs also claim they suffered economic losses, such as "[in]ability to obtain credit" because they filed for bankruptcy. ECF No. 1 at 11. However, Plaintiffs admit that they filed for bankruptcy because they were "fac[ed] [with] the prospect of a loss of their home." *Id.* at 4. That possibility existed because Plaintiffs' mortgage was in default and their property was scheduled for foreclosure. *See id.* at 2. None of Plaintiffs' allegations sever this chain of causation. *See Galli v. Astoria Bank*, No. 16-CV-3549, 2017 WL 4325824, at *9 (E.D.N.Y. Sept. 27, 2017) (concluding that Regulation X violations did not plausibly cause the plaintiff to file for bankruptcy because "Plaintiff's loss mitigation application would only have helped him avoid filing for bankruptcy if Defendant had provided him with a specific loss mitigation option"). As discussed above, the Complaint does not, for example, plausibly allege that Plaintiffs were qualified for a form of loss mitigation, such as loan modification, that would have cured their default. *See Eslick*, 2017 WL 4836541, at *3; *Darby*, 2016 WL 7212568, at *4. Plaintiffs therefore do not plausibly plead a causal connection between their bankruptcy-related losses and RESPA claims.

**Statutory damages.** Lastly, Plaintiffs seek statutory damages. *See* ECF No. 1 at 9–10. Individual plaintiffs may recover statutory damages "in an amount not to exceed $2,000" if a defendant exhibits "a pattern or practice of noncompliance" with RESPA. 12 U.S.C. § 2605(f)(1)(B). Though there is no specific number of offenses required to show a pattern or practice, the Complaint must render it plausible that Defendants had a "standard or routine way of operating" in violation of RESPA. *See Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 264–65 (S.D.N.Y. 2017) (citation omitted). Plaintiffs fail to make this showing here. At best, Plaintiffs

have alleged one underlying incident—Defendants' rejection of their September 15, 2023 application—and that Defendants ignored some of their communications. *See* ECF No. 1 at 2–3, 8. And though Plaintiffs claim Defendants violated numerous sections of Regulation X, most of these provisions are alleged only in a conclusory fashion. *See id.* at 8, 10. The limited conduct to which Plaintiffs point is insufficient to plausibly allege a pattern or practice of unlawful conduct under RESPA. *See Sutton*, 228 F. Supp. at 265 (finding "three instances of noncompliance with RESPA . . . insufficient to establish a pattern or practice of noncompliance"); *Perron ex rel. Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 858 (7th Cir. 2017) (concluding that two underlying sets of violations "with no evidence of coordination" was insufficient to establish a pattern or practice).

In sum, Plaintiffs fail to plead statutory damages. However, at this early stage of litigation, Plaintiffs have pled actual damages based on emotional distress and certain economic costs, such as counsel fees incurred in response to Defendants' purported RESPA violations.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 12) will be **GRANTED** in part and **DENIED** in part. The Court will deny the Motion with respect to Plaintiffs' negligence and reckless indifference claims (Count 1) and certain of Plaintiffs' RESPA claims for actual damages (Count 3), as outlined above. The Motion will otherwise be granted, and the applicable claims will be dismissed without prejudice. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**